UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONDRA HENDRICKS, | No. C-09-3939 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |
| DETROIT DIESEL CORPORATION, | **(Docket No. 4)** |
| Defendant. | |

Plaintiff Roy McGill initiated a lawsuit in state court in August 8, 2005, against various defendants, including General Motors Corporation ("GM") and Detroit Diesel Corporation ("DDC"). In 2008, the state court permitted the substitution of Sondra Hendricks for Mr. McGill, who had died. *See* Not. of Removal, Ex. C (order, filed on 4/9/2008). On or about June 1, 2009, GM filed for bankruptcy. *See* Not. of Removal ¶ 7. Subsequently, DDC filed a notice of removal based on the bankruptcy action, removing only the claims asserted against it. *See* Not. of Removal ¶ 1. Ms. Hendricks thereafter filed a motion to remand the case. This is the motion currently pending before the Court.

Having considered the parties' briefs and accompanying submissions, as well as all other evidence of record, including the recent decisions cited by both parties, the Court hereby **GRANTS** the motion to remand.

### I.  FACTUAL & PROCEDURAL BACKGROUND

The complaint alleges that Mr. McGill was exposed to asbestos since the 1940's while working as, *inter alia*, a truck driver and welder. *See* Not. of Removal, Ex. B (Prelim. Fact Sheet at

3, 5). The claims pled against DDC specifically are: negligence, strict liability, and false representation. These same claims are pled against GM.

According to DDC, DDC was originally a division in GM. *See* Lankford Decl., Ex. C (Merrion Decl. ¶ 5). In 1988, GM sold various assets in that division to a third party and that division became a new corporation, *i.e.*, DDC. *See* Lankford Decl., Ex. C (Merrion Decl. ¶ 7). The Sales Agreement between GM and DDC provided that,

> [n]otwithstanding anything to the contrary in this Agreement, DD shall not assume or become liable for and GM shall indemnify and hold DD harmless against any liabilities, obligations or commitments of GM or any of its Affiliates, whether contingent or otherwise, fixed or absolute, known or unknown, present or future or otherwise, relating, directly or indirectly, to (i) the conduct of the GM Operations or the ownership of the Assets prior to the Closing, including without limitation, . . . products liability claims, litigation, . . . environmental problems . . . , (ii) claims relating, directly or indirectly, to products manufactured, distributed or sold by GM prior to the Closing . . . .

Lankford Decl., Ex. D (Sales Agreement ¶ III) (assumption of liabilities). The Sales Agreement further provided that, "[f]rom and after the Closing, GM shall indemnify, defend and hold harmless DD, and DD shall indemnify and hold harmless GM pursuant to the Indemnification Agreement attached hereto as Exhibit 8.1.5(D)." Lankford Decl., Ex. D (Sales Agreement ¶ 10) (indemnification).

The Indemnification Agreement contains language similar to that contained in the Sales Agreement. Paragraph 1.1 of the Indemnification Agreement states:

> Subject to the terms and conditions of the Sales Agreement, GM shall indemnify, defend and hold harmless DD and its successors and assigns, after the Closing, from and against all demands . . . asserted against, resulting to, imposed upon or incurred by DD . . . , directly or indirectly, by reason of, resulting from or in connection with (A) liabilities or obligations of, or claims against, GM . . . existing as of the Closing or arising out of facts or circumstances existing at or prior thereto . . . , whether or not such liabilities or obligations were known at the time of the Closing; (B) liabilities arising out of or relating to product liability claims relating to products manufactured or sold by GM, or services rendered by GM, prior to the date of the Closing . . . .

Lankford Decl., Ex. E (Indemnification Agreement ¶ 1.1).

Similarly, ¶ 2.1 of the Indemnification Agreement states:

2

> GM shall indemnify, defend and hold harmless DD . . . from and against all governmental or private Damages asserted against, resulting to, imposed on, or incurred by DD . . . by reason of, resulting from, or in connection with releases of hazardous substances, including any releases within the property, that: (i) are the result of GM's or any previous owner's or operator's ownership or operation of the Assets, and (ii) occurred, existed, was caused or arises from acts, omissions or events on or before the date of Closing; provided that in no event shall GM be obligated to indemnify any individual or entity for any omission or act of malfeasance which gives rise to any environmental liability.

Lankford Decl., Ex. E (Indemnification Agreement ¶ 2.1).

## II.  DISCUSSION

### A.  Jurisdiction

In its notice of removal, DDC asserts that removal of the claims asserted against it is appropriate based on the GM bankruptcy. Title 28 U.S.C. § 1452 governs removal of claims related to bankruptcy cases. It provides as follows:

> (a)  A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, *if such district court has jurisdiction of such claim or cause of action under section 1334 of this title* [28 U.S.C. § 1334].
>
> (b)  The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title [28 U.S.C. §§ 158(d), 1291, or 1292] or by the Supreme Court of the United States under section 1254 of this title [28 U.S.C. § 1254].

28 U.S.C. § 1452.

Removal is permitted under § 1452 where the district court has bankruptcy jurisdiction over the case pursuant to 28 U.S.C. § 1334. Under § 1334, a district court has jurisdiction over:

(1)  All cases under title 11. (This jurisdiction is exclusive.) *See* 28 U.S.C. § 1334(a).

(2)  All civil proceedings arising under title 11 or arising in or related to cases under title 11. (This jurisdiction is not exclusive.) *See id.* § 1334(b).

1    In the instant case, DDC does not make any contention that the instant case is either (1) a
2 case under title 11[1] or (2) a civil proceeding arising under title 11 or arising in a case under title 11.[2]
3 Rather, DDC's sole assertion is that the instant case is (3) a civil proceeding "related to" a case
4 under title 11, *i.e.*, the GE bankruptcy case.

"In enacting [§ 1334(b), which includes the 'related to' provision,], Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir. 1984). In *Pacor*, the Third Circuit stated that

> the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. . . . [T]he proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor*, 743 F.2d at 994 (emphasis in original). The Ninth Circuit has adopted the *Pacor* court's test for relatedness. *See In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (adopting the *Pacor* standard without limitation).

Because the Ninth Circuit has adopted the *Pacor* court's test for relatedness, the Court examines the facts underlying *Pacor*.

1.  *Pacor*

In *Pacor*, the Higgins – a married couple – sued Pacor, Inc. in state court for damages allegedly caused by the husband's work-related exposure to asbestos supplied by Pacor, a distributor of chemical supplies. Pacor filed a third-party complaint against Johns-Manville Corporation

---

[1] *See* 1-3 Collier on Bankruptcy ¶ 3.01 (explaining that "[t]he case referred to in section 1334(a) is the umbrella under which all of the proceedings that follow the filing of a bankruptcy petition take place").

[2] *See in re ACI-HDT Supply Co.*, 205 B.R. 231, 234-35 (9th Cir. 1997) (noting that "[t]he term 'arising under' describes those proceedings involving a cause of action created or determined by a statutory provision of title 11 [w]hereas 'arising in' refers to administrative matters that are not based on any right expressly created by title 11 but would nevertheless have no existence outside of the bankruptcy case").

("Manville"), the company Pacor claimed was the original manufacturer of the asbestos. *See Pacor*, 743 F.2d at 986. Subsequently, Manville filed for bankruptcy. The state court then severed the third-party action (Pacor-Manville) from the main action (Higgins-Pacor). As the state court was preparing to bring to trial the Higgins-Pacor case, Pacor filed a petition for removal in bankruptcy court, seeking to remove the entire Higgins-Pacor-Manville controversy to bankruptcy court. *See id.*

The issue for the court was whether the Higgins-Pacor case was related to the Manville bankruptcy for purposes of bankruptcy jurisdiction. The court concluded that the case was not related because

> the primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate . . . . At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins-Pacor action would in no way bind Manville in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the Higgins-Pacor action, it could not be bound by res judicata or collateral estoppel. Even if the Higgins-Pacor dispute is resolved in favor of Higgins (thereby keeping open the possibility of a third party claim), Manville would still be able to relitigate any issue, or adopt any position, in response to a subsequent claim by Pacor. Thus, the bankruptcy estate could not be affected in any way until the Pacor-Manville third party action is actually brought and tried.

*Id.* at 995. The court emphasized: "[A]ny judgment received by the plaintiff Higgs could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification." *Id.* "The test articulated in *Pacor* for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit." *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002).

Significantly, however, the court in *Pacor* distinguished case law cited by defendant in support of its argument that its case was related to the bankruptcy action:

> In *In re Brentano's*, 27 Bankr. 90 (Bankr. S.D.N.Y. 1983), MacMillan, (a nondebtor) agreed to act as guarantor of Brentano's (the debtor's) obligations under a lease. In turn, *Brentano's contractually agreed to indemnify MacMillan for any liability or judgments incurred as a result of this guarantee agreement*. When Brentano's defaulted on the lease, the landlord sued MacMillan to enforce the guarantee. MacMillan successfully removed the action to bankruptcy court as a proceeding "related to" bankruptcy.

5

> In *Brentano's*, however, it is clear that the action between the landlord and MacMillan could and would affect the estate in bankruptcy. By virtue of the indemnification agreement between Brentano's and MacMillan, a judgment in favor of the landlord on the guarantee action would automatically result in indemnification liability against Brentano's. Moreover, even in the absence of an explicit indemnification agreement, an action by a creditor against a guarantor of a debtor's obligations will necessarily affect that creditor's status vis a vis other creditors, and administration of the estate therefore depends upon the outcome of that litigation.

*Pacor*, 743 F.2d at 995 (emphasis added). The court stated that the case under consideration was distinguishable from *Brentano's* because, here, "Pacor is not a contractual guarantor of Manville, nor has Manville agreed to indemnify Pacor, and thus a judgment in the Higgins-Pacor action could not give rise to any automatic liability on the part of the estate." *Id.* Accordingly, the key factor is whether the bankruptcy debtor is a guarantor of the defendant.

    2.    Post-*Pacor*

Since *Pacor*, several courts have held that a case is "related to" a bankruptcy action where, unlike *Pacor*, there is an indemnification agreement between the defendant in the case and the bankruptcy debtor.

For example, in *Pacific Life Ins. Co. v. J.P. Morgan Chase & Co.*, No. SA CV 03-813-GLT (ANx), 2003 U.S. Dist. LEXIS 14705 (C.D. Cal. July 1, 2003), the plaintiffs were purchasers of WorldCom bonds and the defendants were underwriters and/or auditors of WorldCom's public offerings. The plaintiffs sued the defendants in state court after WorldCom had filed for bankruptcy, claiming that they had relied on representations made by the defendants about WorldCom's creditworthiness when they purchased the bonds. The defendants removed to federal court pursuant to § 1334(b). *See id.* at *2-3. The court held that the removal was proper because the case was related to the WorldCom bankruptcy action. In so holding, the court acknowledged *Pacor* but distinguished it on the basis that, "[h]ere, Defendants have written indemnification agreements with WorldCom for liabilities arising from false or misleading statements contained in registration statements or prospectus related to bond offerings. Allegedly false and misleading statements in such documents serve as the basis for Plaintiffs' state and federal claims." *Id.* at *5 n.1.

6

In *Williams v. United States Brass Corp.*, 169 B.R. 684 (S.D. Cal. 1994), the plaintiffs had filed suit against various defendants in state court. Approximately six months before trial, one of the defendants filed for bankruptcy, which prompted another defendant to remove the case to federal court based on bankruptcy jurisdiction. Following removal, the plaintiffs indicated their intent to dismiss the bankruptcy debtor from the case and therefore moved for remand. *See id.* at 687. The court held that, even though the bankruptcy debtor would be dismissed, the case was still related to the bankruptcy action because, prior to the bankruptcy action, the removing defendant had entered into a sharing agreement with the bankruptcy debtor "for the purpose of apportioning the payment of settlements and judgments entered against [either the defendant or the debtor] resulting from the [lawsuit initiated by the plaintiffs]." *Id.* at 689. The court noted that, if the plaintiffs prevailed in their claims, then the debtor's estate "will undoubtedly be affected by enforcement of the Sharing Agreement against [the debtor]. The fact that [the removing defendant] will conceivably become [a] contract creditor[] of the [debtor's] estate based solely on the outcome of the polybutylene litigation establishes a sufficient nexus to find that the polybutylene litigation is 'related to' [the bankruptcy action]." *Id.* at 690 (but subsequently concluding that mandatory abstention doctrine applied to the properly removed case; also concluding that equitable considerations required remand to state court).

*See also Toth v. Bodyonics, Ltd.*, No. 06-1617, 2007 U.S. Dist. LEXIS 18278, at *6 (E.D. Pa. Mar. 15, 2007) (concluding that "related to" test was satisfied because "[t]he language of the indemnification provision will create liability for the MuscleTech bankrupt estate if plaintiff prevails in the products liability case").

3.  <u>Instant Case</u>

In the instant case, both parties rely on *Pacor* in support of their respective positions. However, in light of the Indemnification Agreement between GM and DDC, DDC has the stronger argument that *Pacor* is materially distinguishable from the instant case and that *In re Brentano's* applies instead. Ms. Hendricks has not made any argument that the Indemnification Agreement would not cover the claims asserted against DDC in the instant case. Even if she had, that argument would not be very persuasive given the declaration submitted by DDC in support of its opposition,

which states that, in 2005, GM accepted a tender by DDC of defense and indemnity of the claims at issue here. The claims were defended by counsel for GM and paid for by GM until June 2009 when it declared bankruptcy. *See* Lankford Decl. ¶ 3.

Ms. Hendricks argues still that, in spite of the Indemnification Agreement, the relatedness test still has not been met. As noted above, under *Pacor*, "the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*." *Pacor*, 743 F.2d at 994 (emphasis in original). Ms. Hendricks argues that the outcome of the claims asserted against DDC could have no conceivable effect on the GM bankruptcy because of findings recently made by the federal court in charge of the GM bankruptcy. *See* Reply, Ex. B (transcript for 10/16/2009 hearing).

Ms. Hendricks's argument is not without some merit but in the end it is not convincing. The precise issue before the bankruptcy court was whether, per DDC's request, it should extend and enforce a stay under 11 U.S.C. § 362(a) to cover the claims asserted against DDC or, alternatively, to enjoin the litigation of the claims pursuant to 11 U.S.C. § 105. The bankruptcy court denied the request to extend the stay or to enjoin the litigation, noting first that it had found no case in which the relief sought was sought by someone other than the debtor, a trustee, or at least the estate. "[A] request of this character is unprecedented." Reply, Ex. B (Tr. at 35). The court continued: "The normal circumstance under which either we extend the scope of the 362 stay or grant a 105(a) injunction is to protect the estate. And when the estate needs protecting, it asks for it." Reply, Ex. B (Tr. at 35-36). Here, there was no such request by the GM estate – or for that matter by the creditor's committee. "[I]f either of them thought relief of this type was necessary to protect the interest of the estate we would have heard about it." Reply, Ex. B (Tr. at 36).

The bankruptcy court then added that,

> [g]etting beyond that, we traditionally look to particular factors to grant relief of this character. To be sure, as some of the papers note, irreparable injury is not required to grant relief of this character but some injury is. There's got to be some reason for granting the relief. . . . And here, . . . there is no material affect upon the estate or upon its ability to reorganize or upon its ability to liquidate.

Reply, Ex. B (Tr. at 36). The court explained:

8

> [T]he defense of these asbestos actions would have no material affect on the debtor's reorganization or, for that matter, their liquidation. They would not -- there's been no showing that they would give rise to material distraction of management or impair management doing its job. And while I assume, without deciding, that if the indemnifications were allowed they would result in some incremental dilution of other unsecured creditors' recoveries since it's at least foreseeable that we're going to have a pot plan here. For the benefit of the unsecured community the incremental affect is not likely to have a material affect on whether the estate as a whole or on any of the other creditors' recoveries.

Reply, Ex. B (Tr. at 34-35). In essence, the bankruptcy court was considering the issue of prejudice. There was no need to stay the claims asserted against DDC or enjoin the litigation because there was no demonstration that, the GM bankruptcy would be materially affected absent the stay.

That the GM bankruptcy would not be materially affected, however, does not mean that the outcome of the claims asserted against DDC could have no conceivable effect on the GM bankruptcy. The focus of the bankruptcy court was on the magnitude of the financial impact of the litigation on the debtor's reorganization or liquidation, *i.e.*, the quantitative effect. It did not focus on the qualitative legal effect required under the relatedness test of § 1452. Moreover, there is a difference between there being no *material* effect as determined by the bankruptcy court and there being no *conceivable* effect as required in *Pacor*. The bankruptcy court only found no "material effect." As *Pacor* and *In re Brentano's* establish, there is a cognizable "conceivable effect" on the bankrupt estate here given the Indemnification Agreement between GM and DDC and GM's role as DDC's guarantor. Accordingly, the Court concludes that there is "related to" jurisdiction over the claims asserted against DDC.

B.      Mandatory Abstention

Ms. Hendricks argues that, even if there is "related to" jurisdiction, mandatory abstention is required pursuant to 28 U.S.C. § 1334(c). Section 1334(c) provides as follows:

> (1)     Except with respect to a case under chapter 15 of title 11 [11 U.S.C. § 1501 *et seq.*], nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
>
> (2)     Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, *related to* a case

9

> under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334 (emphasis added).

The problem for Ms. Hendricks is that the Ninth Circuit has held that mandatory abstention does not apply to removed cases because there is no parallel court proceeding. *See Schulman v. California (In re Lazar)*, 237 F.3d 967, 981-82 (9th Cir. 2001) (explaining that, once there is a removal, no related state proceeding exists). The Court acknowledges that "most courts that have addressed this issue have held to the contrary." 16-107 Moore's Fed. Prac – Civ. § 107.15[8][c][ii]. *See, e.g.*, *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446-47 (2d Cir. 2005). In *McKinley*, for example the Second Circuit noted that

> [t]hose cases holding that mandatory abstention does not apply to removed cases rely on two premises: (1) once removal occurs, there is no longer a "commenced" state proceeding within the meaning of Section 1334(c)(2), and (2) Section 1452(b)'s discussion of procedures for removal and remand does not cross-reference Section 1334(c)(2), suggesting that the abstention section does not apply to removed actions.
>
> Courts on the other side of the issue emphasize that (1) because Section 1334(c)(2) says "is commenced" and not "is pending," mandatory abstention does not require a pending state law suit; (2) on remand to state court, the proceeding will be reinstated and a speedy adjudication can be had; and (3) providing for mandatory abstention in removal situations "better comports with the plain language of § 1334(c)(2) as well as Congress's intent that mandatory abstention strike a balance between the competing interests of bankruptcy and state courts." We agree with each of these premises and see no need for an explicit reference in Section 1452(b) to Section 1334(c)(2) or (d); both statues must be applied to the factual situations that they govern.

*Id.*

This Court, however, is (of course) governed by Ninth Circuit law, not the law of other circuits, and *Lazar* remains the law of this Circuit. Accordingly, the Court rejects Ms. Hendricks's argument for mandatory abstention.

C.     Equitable Remand

That mandatory abstention is not required, however, does not end the analysis because the bankruptcy removal statute provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b).

> Courts have typically identified seven factors governing the decision to remand: (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness of the action to the bankruptcy case; (6) any jury trial right; and (7) prejudice to plaintiffs from removal.

*Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 813 (N.D. Cal. 2006) (Patel, J.); *see also Lent v. Chesterton*, No. C 09-3941 PJH, 2009 U.S. Dist. LEXIS 105225, at *6-7 (N.D. Cal. Oct. 27, 2009) (noting the same factors). Other factors that have been considered include judicial economy, the burden on the bankruptcy court's docket, the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, the presence in the proceeding of nondebtor parties, and the possibility of prejudice to parties other than plaintiffs. *See In re Roman Catholic Bishop*, 374 B.R. 756, 761-62 (S.D. Cal. 2007); *In re TIG Ins. Co.*, 264 B.R. 661, 665-66 (C.D. Cal. 2001); *see also In re Roman Catholic Archbishop of Portland*, 338 B.R. 414, 420 (D. Or. 2006) (noting that "[t]he equitable factors that the court considers in determining whether to abstain on a discretionary basis are used in determining remand motions").

Taking into account the above factors, the Court concludes that the relevant factors weigh in favor of an equitable remand. First, the claims against DDC are all state law claims; thus, state law claims clearly predominate. Second, the claims do not involve the debtor, GM, directly. Third, while the outcome of the claims asserted against DDC will conceivably have an effect on the GM bankruptcy, there is an insufficient showing that any effect would be material. As noted above, the bankruptcy court in denying the stay found that there would not be a material effect upon reorganization or liquidation. Based on the record presented before this Court, the Court agrees. For example, there is nothing to indicate that the amount at stake is so great that it would likely have a material effect on the bankrupt estate. Fourth, this case has been pending before the state court

since 2005.[3] Neither party disputes that the state courts have adjudicated many suits similar to this one. Finally, the Plaintiff has a right to jury trial in its suit against DDC. Thus, the Court sees no substantial benefit to retention of jurisdiction because there is no indication that the case would eventually be transferred to the bankruptcy court in New York for resolution since the claims need to be tried before a jury. In other words, the question is not whether the state court or the bankruptcy court would be the better forum. The question is whether the state court or this court (or potentially a district court but not the bankruptcy court in New York) would be a more effective forum. *See also Lent*, 2009 U.S. Dist. LEXIS 105225, at *7-8 (also concluding that claims asserted against DDC should be remanded based on consideration of similar points). In short, there appear to be no substantial benefit in retaining this suit in the federal district court.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that it has removal jurisdiction over the claims asserted against DDC but that the claims should be remanded back to state court. The Clerk of the Court is instructed to enter judgment in accordance with this order and close the file in this case.

This order disposes of Docket No. 4.

IT IS SO ORDERED.

Dated: November 25, 2009

EDWARD M. CHEN
United States Magistrate Judge

---

[3] That no trial date has been set as of yet, *see* Opp'n at 10, does not detract from that fact.